Polaris Industries Inc.,

Case No. 19-cv-0291 (WMW/DTS)

Plaintiff,

v.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT
JUDGMENT**

TBL International Inc.,

Defendant.

This matter is before the Court on Plaintiff Polaris Industries Inc.'s (Polaris) motion for default judgment against Defendant TBL International Inc. (TBL). (Dkt. 13.) For the reasons addressed below, the motion is granted.

## BACKGROUND

Polaris manufactures recreational vehicles, such as all-terrain vehicles (ATVs) and motorcycles, as well as accessories to be used with the vehicles. The Rhino Grip, a mounting bracket used to affix and fasten items onto recreational vehicles, is one such accessory that Polaris manufactures. Polaris registered the "RHINO GRIP" mark with the United States Patent and Trademark Office in 2015. TBL, a New York company that appears to do business under the name Maggift LLC, manufactures, sells and distributes products that include mounting brackets for recreational vehicles labeled as "Rhino Grip" products.

Polaris alleges that TBL sells counterfeit Rhino Grip products that are identical in appearance to Polaris's trademarked Rhino Grip products. Polaris initiated this lawsuit

against TBL in February 2019. TBL's answer was due on March 5, 2019. To date, TBL has not filed an answer or any other pleading.

In April 2019, Polaris applied for entry of default, which the Clerk of Court entered. Polaris subsequently moved for default judgment and various remedies. The Court held a hearing on Polaris's motion on October 2, 2019, at which TBL did not appear.

## ANALYSIS

The entry of default judgment is a two-step process governed by Federal Rule of Civil Procedure 55. First, the party seeking default judgment must obtain an entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the party seeking default judgment must apply to the district court for entry of default judgment. Fed. R. Civ. P. 55(b)(2).

Whether to enter default judgment against a party is committed to the sound discretion of the district court. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). Although default judgments are not favored because adjudication on the merits is preferred, *id.*, a party's complete lack of participation in litigation is a basis for granting default judgment, *see, e.g.*, *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118–19 (8th Cir. 1997).

## I.     Liability

Upon entry of default, all factual allegations in the complaint except those relating to the amount of damages are taken as true.  *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).  It is the district court's duty to consider whether the unchallenged facts constitute a legitimate cause of action.  *Id.*   Polaris asserts five claims in its complaint: (1) counterfeiting and trademark infringement, 15 U.S.C. § 1114; (2) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); (3) deceptive trade practices, Minn. Stat. §§ 325D.43 *et seq.*; (4) common-law trademark infringement; and (5) common-law unfair competition.  The Court addresses liability as to each claim in turn.

### A.     Counterfeiting and Trademark Infringement (Count I)

The owner of a registered trademark may bring an action for infringement if another person is using a mark that too closely resembles the registrant's trademark. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015).  The district court must determine "whether the defendant's use of a mark in commerce 'is likely to cause confusion, or to cause mistake, or to deceive' with regards to the plaintiff's mark."  *Id.* (quoting 15 U.S.C. § 1114(1)(a)).  In doing so, the district court considers six factors to determine whether a likelihood of confusion exists.  These factors are (1) the strength of the owner's mark, (2) the similarity between the owner's mark and the alleged infringer's mark, (3) the degree to which the products compete with each other, (4) the alleged infringer's intent to pass off its goods as those of the trademark owner, (5) incidents of actual confusion, and (6) the type of product and its costs and conditions of purchase. *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 887 (8th Cir. 2014).

Applying these factors to the allegations in the complaint, the Court concludes that a likelihood of confusion exists. The Rhino Grip is a distinctive product attributable to Polaris for which Polaris has a registered trademark. Substantial similarity exists between Polaris's Rhino Grip product and TBL's product, as is evident from the side-by-side images included in Polaris's complaint. Although Polaris's product is offered on its subsidiary's website and TBL's product is sold on common platforms, such as Amazon and eBay, the products nonetheless compete with each other. The same consumers—those interested in mounting brackets for a recreational vehicle—occupy each product's market, and the products are marketed to those consumers. TBL initially was on constructive notice of Polaris's trademark over the "RHINO GRIP" mark. But after Polaris sent TBL two cease-and-desist letters, TBL had *actual* notice of its infringement of Polaris's trademark. From these facts, the Court infers TBL's intent to pass off to customers TBL's goods as Polaris's Rhino Grip products. Finally, the Rhino Grip product is not so expensive or different in price from TBL's product that consumers might differentiate from whom they purchase the product.

Because a majority of the likelihood-of-confusion factors favors Polaris, the Court concludes that Polaris has stated a claim for trademark infringement in Count I of its complaint.

### B. Unfair Competition and False Designation of Origin (Count II)

The Lanham Act also permits a registered trademark owner to recover for unfair competition that results from false designations of origin. *Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir. 1985). "A false designation of

origin occurs when another's use of the same or similar mark [as the owner's registered mark] actually confuses, or is likely to cause confusion among consumers as to the source of the product." *Id*. at 1330. A showing of a likelihood of confusion entitles the trademark owner to injunctive relief. *Id*. The six factors used to determine a likelihood of confusion as to a claim for trademark-infringement also are used to determine a likelihood of confusion as to a claim for false designation of origin. *Id*.

Here, consistent with the Court's conclusion in Part I of this Order, the Court concludes that Polaris has alleged a likelihood of confusion. As such, Polaris has stated a claim for false designation of origin in Count II of its complaint.

### C. Deceptive Trade Practices (Count III)

The Uniform Deceptive Trade Practices Act (UDTPA) makes it unlawful to pass off goods as those of another; to cause a likelihood of confusion or misunderstanding as to the source of the goods; to cause a likelihood of confusion as to the affiliation, connection, or association with another; or to engage in any other conduct that similarly creates a likelihood of confusion. Minn. Stat. § 325D.44, subdiv. 1(1)–(3), (13). Neither proof of competition between the parties nor actual confusion is required to prevail. *Id.* at subdiv. 2.

Polaris asserts that TBL's actions constitute "passing off" and "deception as to origin," causing confusion as to the source of the disputed goods. Based on the facts alleged in the complaint, when taken as true, and based on the analysis above, the Court agrees. Polaris has stated a claim of deceptive trade practices under Minnesota law.

**D.     Common Law Trademark Infringement (Count IV)**

There is no distinction between the elements required to prove a Lanham Act trademark-infringement claim and those required to prove a common law trademark-infringement claim. *See John Deere & Co. v. Payless Cashways, Inc.*, 681 F.2d 520, 523–24 (8th Cir. 1982). In light of the Court's determination that Polaris has stated a claim for trademark infringement under the Lanham Act, Polaris also has stated a common law trademark-infringement claim.

**E.     Common Law Unfair Competition (Count V)**

Similar to trademark infringement, that which constitutes unfair competition under the Lanham Act also constitutes common law unfair competition. *Cf. Brown & Bigelow v. B.B. Pen Co.*, 191 F.2d 939, 943 (8th Cir. 1951). As such, Polaris has stated a claim for common law unfair competition.

In summary, Polaris has established that the unchallenged facts in the complaint constitute legitimate causes of action. In light of TBL's failure to defend against this action, default judgment in favor of Polaris against TBL is warranted.

**II.     Relief**

The issues that remain pertain to the relief to which Polaris is entitled. Polaris seeks the following: a permanent injunction prohibiting TBL from using the "RHINO GRIP" mark and from holding itself out as an authorized seller of Rhino Grip products; an order requiring the destruction of all infringing products; statutory damages; and attorneys' fees, costs, prejudgment interest, and post-judgment interest. The Court addresses each form of relief in turn.

## A. Injunctive Relief

Polaris argues that it is entitled to permanent injunctive relief to prevent future infringement by TBL. Injunctive relief is an available remedy for trademark infringement. 15 U.S.C. § 1116. After succeeding on the merits of a trademark-infringement claim, a plaintiff seeking permanent injunctive relief must show that it has suffered an irreparable injury, legal remedies such as monetary damages are inadequate to compensate for the injury, the balance of hardships between the plaintiff and the defendant warrant an equitable remedy, and the public interest will not be disserved by a permanent injunction. *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1047 (D. Minn. 2015).

Because a trademark represents an intangible asset, such as reputation or goodwill, a plaintiff can establish irreparable injury by demonstrating a likelihood of customer confusion. *Id*. "Reputational harm and damage to goodwill are difficult to quantify and monetary damages often are inadequate to compensate such injuries." *Id*. For these reasons, the first two elements are satisfied here.

The balance of harms also supports entry of a permanent injunction. "Trademarks vest a registrant with the exclusive use of the mark." *Id*. at 1048. TBL's infringement erodes that exclusivity and harms Polaris. The public interest also favors injunctive relief because "the public interest is served by preventing customer confusion in the marketplace." *Id*. In light of these circumstances, Polaris's request for a permanent injunction is granted.

**B.    Destruction of Infringing Products**

Polaris also seeks an order requiring the destruction of TBL's infringing products. When trademark infringement or false designation of origin has been demonstrated, "the court may order that . . . the subject of the violation . . . shall be delivered up and destroyed."  15 U.S.C. § 1118.  As grounds for doing so are established here, Polaris's request for the destruction of all infringing products is granted.

**C.    Damages**

Monetary remedies are available to a plaintiff on its claims of trademark infringement and unfair competition.  15 U.S.C. § 1117.  Here, Polaris seeks an award of statutory damages under the Lanham Act in lieu of actual damages and profits.

**1.    Availability of Statutory Damages**

When a counterfeit mark[1] has been used "in connection with the sale, offering for sale, or distribution of goods or services," the plaintiff may elect "an award of statutory damages . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold," in lieu of actual damages and profits.  *Id.*, § 1117(c)(1).  In the event of willful counterfeiting, statutory damages may not exceed "$2,000,000 per counterfeit mark per type of goods or services sold."  *Id.*, § 1117(c)(2).  An infringer acts "willfully" if the infringer knows the conduct undertaken constitutes infringement.  *Doctor's Assocs., Inc. v. Subway.SY LLC*, 733 F. Supp. 2d 1083, 1088 (D. Minn. 2010).

---

[1]    "Counterfeit mark" is defined as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."  15 U.S.C. § 1116(d)(1)(B)(i).

TBL received from Polaris two cease-and-desist letters, each of which notified TBL that its conduct may constitute infringement. Polaris also properly served TBL with the complaint in this action. Yet TBL failed to participate in these proceedings. On this record, the Court concludes that TBL's use of a counterfeit mark in connection with the sale of its Rhino Grip products constitutes willful counterfeiting. And because any evidence pertaining to the amount of actual damages that Polaris may be entitled to receive remains exclusively with TBL—a party to this action that has refused to participate in these proceedings—statutory damages are the appropriate remedy here.

### 2. Amount of Statutory Damages

The Court next determines the amount of statutory damages to award. Polaris seeks $2,000,000, the maximum amount of statutory damages permitted under the Lanham Act for willful counterfeiting. Polaris argues that this amount is warranted to punish and deter TBL's blatant and willful counterfeiting, which was motivated by TBL's triple purposes of creating consumer confusion, unfairly "trading on the goodwill associated with Polaris's RHINO GRIP mark," and wrongfully profiting from the counterfeit product.

Under the Lanham Act, a "district court is given a great deal of discretion in fashioning the appropriate monetary remedy necessary to serve the interests of justice." *Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 998 (D. Minn. 1986). But the Lanham Act "does not provide guidance for courts to use in determining the appropriate award, [which] is only limited by what the court considers just." *Doctor's Assocs.*, 733 F. Supp. 2d at 1088 (quoting *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124–25

(S.D.N.Y. 2003)).  A plaintiff seeking an award of statutory damages need not submit any evidence pertaining to actual damages.  *Id.*  But that does not mean "that Congress, by setting a range within which statutory damages are to be awarded, intended that there be no fact-finding involved in fixing a damage award within the range."  *Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) (addressing statutory damages in the copyright context).  Ordinarily, a party is entitled to jury findings as to the amount of damages, actual or statutory, to be assessed.  *Id.* at 644.  Although TBL's default shifts this determination to the Court rather than a jury, factual findings as to the amount of statutory damages are appropriate.  *See id.*; *accord All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 622–23 (S.D.N.Y. 2010) (analyzing relevant factors to determine appropriate statutory damages amount following default judgment for willful trademark violation).

"Statutory damages are not only 'restitution of profit and reparation for injury, but [they] are also in the nature of a penalty, designed to discourage wrongful conduct.' " *Doctor's Assocs.*, 733 F. Supp. 2d at 1087–88 (quoting *Cass Cty. Music*, 88 F.3d at 643). When determining statutory damages under the Lanham Act, courts have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*All-Star Mktg. Grp.*, 775 F. Supp. 2d at 622 (internal quotation marks omitted) (collecting cases); *accord Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1072–73 (D. Minn. 2019) (applying similar factors in copyright context).

Because TBL defaulted and there has been no discovery, the record is not fully developed as to the first four factors. But the allegations in Polaris's complaint, which are accepted as true in light of TBL's default, establish several relevant facts. As to the first two factors, there is no specific evidence pertaining to the revenue TBL earned selling its counterfeit product or whether Polaris lost any revenue from TBL's infringement. But based on the allegations in the complaint, TBL sold the counterfeit product on websites such as eBay and Amazon, which suggests at least a national market rather than a small local market. As to the monetary value of Polaris's trademark, which is the third factor, the complaint establishes that Polaris advertised and promoted its trademark extensively nationwide and, as a "market leader," Polaris has "made substantial sales" under its trademark. These facts suggest that the value of Polaris's trademark is not minimal. The fourth factor, the deterrent effect on others besides TBL, is not specifically addressed in the record. But general deterrence also is one of the interests served by statutory damages under the Lanham Act. *See, e.g.*, *Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011). As such, despite the minimal record here, the first four factors generally weigh in favor of a substantial statutory damages award.

Facts pertaining to the last three factors are far more evident on this record. As to the fifth factor, TBL's infringing conduct was willful and persistent. TBL had actual

notice of its allegedly infringing conduct as early as January 2018, when Polaris sent TBL the first cease-and-desist letter. Yet TBL's conduct continued, even after Polaris filed this lawsuit. The sixth factor pertains to whether TBL cooperated in providing Polaris with records from which to assess the value of the infringing product. In light of TBL's default in this case, TBL clearly has made no effort to cooperate. Whether a substantial statutory damages award has the potential to specifically discourage TBL's infringing conduct is the seventh factor. Because the record strongly suggests that TBL's motive was to profit from its conduct, a substantial statutory damages award is likely to discourage TBL's conduct. *See Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1227 (D. Minn. 2008) (observing that statutory damages are more likely to deter an infringer whose motive is to profit).

All of the relevant factors weigh in favor of a substantial statutory damages award to Polaris, the last three of which weigh most heavily. But Polaris's request for $2,000,000, the statutory maximum, is not warranted in this case. *See Ill. Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1356 (N.D. Ga. 2011) ("A statutory maximum damages award should be reserved for trademark infringement that is particularly egregious, involves large amounts of counterfeit goods, or is otherwise exceptional."). "Most judges have issued awards far below the statutory maximum" when, as here, "the defendant willfully infringes on the plaintiff's mark and fails to stop such behavior after being put on notice by the plaintiff or the court, but . . . there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." *All-Star Mktg. Grp.*, 775 F. Supp. 2d at 624

(collecting cases awarding between $25,000 and $250,000 in statutory damages per trademark when the record contained minimal information about the circumstances of the infringement); *accord Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 155 (E.D.N.Y. 2013) (collecting cases and observing that "[c]ourts regularly award statutory damages in the realm of up to $50,000 as amounts that both account for a defendant's willful disregard of trademark laws and as a deterrent to others").

Because statutory damages "serve as a substitute for actual damages," the damages award "should bear some discernible relation to the actual damages suffered." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 687 (D.N.J. 2015) (internal quotation marks omitted); *accord AARP v. Sycle*, 991 F. Supp. 2d 234, 338–41 (D.D.C. 2014) (awarding statutory damages on default judgment in an amount based in part on the estimated revenue generated by the infringer). Here, the record contains little evidence reflecting the value of the trademark and products at issue. But the complaint and exhibits attached thereto demonstrate that the products sold by Polaris and the counterfeit products sold by TBL had similar retail values, which range from approximately $25 to approximately $48. The average retail value of the products at issue, therefore, is approximately $36.50. Using this value as a starting point ensures that the damages award has a rational nexus to the value of the products at issue. Multiplying this number by $1,000, which is the minimum statutory damages amount permitted by law, brings the total to $36,500. Using this multiplier ensures that the damages award also has a rational nexus to the relevant statute. Finally, when a plaintiff seeks both actual damages as well as the infringer's

profits in a case involving the intentional use of a counterfeit mark, a plaintiff may be entitled to treble damages. 15 U.S.C. § 1117(b). Applying this formula by analogy and trebling the $36,500 calculated above results in a total statutory damages award of $109,500. This approach ensures that the damages award rationally accounts for the willfulness of TBL's conduct. This amount also is in line with statutory damages awarded in other trademark cases when a willful infringer has defaulted. *See All-Star Mktg. Grp.*, 775 F. Supp. 2d at 624–25 (collecting cases awarding between $25,000 and $250,000 in statutory damages).

In summary, The Court concludes that an award of $109,500 is appropriate to address the interests served by statutory damages—to compensate Polaris for its injury, penalize TBL for its willful conduct, and deter TBL and others from the same or similar conduct.

### D. Attorneys' Fees, Costs, and Interest

Polaris also seeks its attorneys' fees, costs, and both prejudgment and post-judgment interest. The Court addresses each request in turn.

#### 1. Attorneys' Fees

The Lanham Act provides that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A defendant's willful and deliberate conduct may present the type of "exceptional" case for which an award of attorneys' fees is appropriate. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011). A district court also may award attorneys' fees to the prevailing party, under Minnesota

law, when "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Minn. Stat. § 325D.45, subd. 2. For the reasons addressed above, TBL's willful and persistent conduct satisfies the legal standard for awarding attorneys' fees established under both the Lanham Act and Minnesota's UDTPA.

A district court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000). The burden of establishing that the fees sought are reasonable rests with the party seeking attorneys' fees. *Hensley*, 461 U.S. at 433–34. Courts employ the lodestar method when determining the amount of reasonable attorneys' fees. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986); *see also Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Bhd. Labor Leasing*, 974 F. Supp. 751, 754–56 (E.D. Mo. 1997) (applying lodestar method to determine reasonable fees under ERISA), *aff'd*, 141 F.3d 1167 (8th Cir. 1998). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Del. Valley Citizens' Council*, 478 U.S. at 564; *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley*, 461 U.S. at 433, which must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). A district court may rely on its experience and knowledge of prevailing market

rates to determine whether the claimed hourly rate is reasonable. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Polaris seeks $10,574.50 in attorneys' fees. In support of this amount, the billing records that Polaris submitted indicate that Polaris incurred attorneys' fees for 26.7 hours at hourly rates ranging from $315 to $510. These fees were incurred when conducting pre-suit investigation, drafting and revising the complaint and exhibits, and drafting and filing the motion for default judgment and supporting documents. Based on the record presented, the Court concludes that Polaris's request for attorneys' fees of $10,574.50 is reasonable in light of the prevailing hourly rates and that the tasks counsel performed were reasonable and necessary to prosecute this litigation successfully.

### 2. Costs

Polaris also seeks its costs. A prevailing plaintiff in a trademark-infringement action is entitled to recover "the costs of the action." 15 U.S.C. § 1117(a). Documents submitted in support of Polaris's claim establish that Polaris incurred costs in the amount of $897.71 attributable to this action. Accordingly, the Court awards Polaris costs in that amount.

### 3. Prejudgment Interest

The Lanham Act expressly authorizes an award of prejudgment interest in cases that involve treble actual damages or profits under Section 1117(b), but the Lanham Act does *not* expressly authorize an award of prejudgment interest in cases that involve statutory damages under Section 1117(c). *See* 15 U.S.C. § 1117(b), (c). Some federal courts have concluded that awarding prejudgment interest is unwarranted when, as here,

the plaintiff's damages do not arise under Section 1117(b). *See, e.g.*, *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015) (observing that Section 1117 "makes no express provision for prejudgment interest in other circumstances" and "prejudgment interest is not intended to be awarded except as provided in the statute"); *Stark Carpet Corp.*, 954 F. Supp. 2d at 156 (denying request for prejudgment interest on statutory damages award because "[s]tatutory damages awarded under the Lanham Act serve as a punishment and as a deterrent to future trademark infringement" as opposed to "the return of monies to which a plaintiff had a prior claim but of which the plaintiff had been deprived"). Polaris has not identified, and the Court's research has not found, an Eighth Circuit decision addressing prejudgment interest in the context of statutory damages awarded under the Lanham Act.[2] In general, however, a district court has discretion when deciding whether to grant or deny prejudgment interest in Lanham Act cases. *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 742–43 (8th Cir. 2000). Assuming that a district court has the discretionary authority to award prejudgment interest on a Lanham Act statutory damages award, the Court concludes that prejudgment interest is not warranted in this case.

The purposes of prejudgment interest are to promote settlement, deter attempts to benefit unfairly from litigation delays, and to compensate the prevailing party for the

---

[2]     The Court is mindful that some federal courts in other jurisdictions have awarded prejudgment interest on Lanham Act statutory damages awards. *See, e.g.*, *Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1205 (C.D. Cal. 2012); *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 396 (E.D.N.Y. 2008). But these decisions lack any analysis addressing the basis for awarding prejudgment interest. Accordingly, the persuasive value of these decisions is limited.

actual costs of damages incurred. *See id.* at 743; *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). The need to further these goals is less compelling when, for example, the plaintiff's actual damages are difficult to ascertain and the total damages award adequately compensates the plaintiff. *See, e.g.*, *Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1137 (D. Minn. 2005); *see also Masters v. UHS of Del., Inc.*, 631 F.3d 464, 475–76 (8th Cir. 2011) (concluding that denial of prejudgment interest was not an abuse of discretion because the district court "determined that the award adequately compensated [the plaintiff] and that it would be inequitable to award the interest"). Moreover, there "is no need for a discretionary award of prejudgment interest where the amount of the underlying statutory award is itself discretionary and can be set at a figure which compensates the plaintiff for, among other things, the time that has elapsed since the defendant infringed [plaintiff's] rights." *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 856–57 (N.D. Ill. 2019); *accord Stark Carpet Corp.*, 954 F. Supp. 2d at 156. Here, because Polaris's actual damages are not ascertainable, the Court has awarded Polaris statutory damages in an amount intended to fully compensate Polaris, punish TBL, and deter future infringement. The primary purposes of prejudgment interest would not be furthered by awarding prejudgment interest in the circumstances presented here.

Polaris also relies on Minnesota law in support of its request for prejudgment interest. *See* Minn. Stat. § 549.09, subd. 1(b), (c)(2). But Polaris does not seek damages on its state-law claims. Instead, Polaris's request for damages is limited to statutory damages under the Lanham Act. "The question of whether interest is to be allowed, and

also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995) (internal quotation marks omitted); *cf. Entergy Ark., Inc. v. Nebraska*, 358 F.3d 528, 557 (8th Cir. 2004) (concluding that "district court did not err by not applying the state prejudgment interest statute" to damages awarded under federal law); *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1246 (8th Cir. 1994) (concluding that district court did not err by refusing to award prejudgment interest under state law, observing that "at least one circuit has held that when faced with a general verdict resulting from mixed federal and state claims, the district court may apply the federal rule and deny interest"). Because Polaris's statutory damages award arises exclusively under federal law, Minnesota's prejudgment interest statute does not apply.

For these reasons, Polaris's request for prejudgment interest is denied.

### 4. Post-judgment Interest

Under federal law, post-judgment interest is mandatory. 28 U.S.C. § 1961(a) (providing that post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court"); *see also Hillside Enters. v. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995). "The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees." *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991). Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C.

§ 1961(a).  As such, Polaris's request for post-judgment interest is granted at the rate set by 28 U.S.C. § 1961(a).

## ORDER

Based on the foregoing analysis and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.    Plaintiff Polaris Industries Inc.'s motion for default judgment, (Dkt. 13), is **GRANTED**.

2.    Polaris's request for a permanent injunction is **GRANTED** and TBL is enjoined from:

      a.  Using the "RHINO GRIP" mark or any other mark that is similar to the "RHINO GRIP" mark; and

      b.  Holding itself out as an authorized seller of Rhino Grip products or any products with a mark similar thereto.

3.    Pursuant to 15 U.S.C. § 1116(a), TBL shall file with the Court and serve on Polaris, within thirty days after service of the injunction on TBL, a written report under oath setting forth in detail the manner and form in which TBL has complied with the injunction.

4.    Polaris's request for the destruction of TBL's infringing products is **GRANTED** pursuant to 15 U.S.C. § 1118.  TBL is directed to destroy all infringing and counterfeit goods using the "RHINO GRIP" mark or any other similar mark.

5.    Polaris is awarded damages, attorneys' fees, costs, and interest as follows:

      a.  $109,500 in statutory damages pursuant to 15 U.S.C. § 1117(c);

b. $10,574.50 in attorneys' fees;

c. $897.71 in costs; and

d. post-judgment interest on the total judgment amount of $120,972.21, calculated pursuant to the formula set forth in 28 U.S.C. § 1961.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  March 6, 2020                                    s/Wilhelmina M. Wright
                                                          Wilhelmina M. Wright
                                                          United States District Judge